# Watt *against* Scott.

The sale of a decedent's land, made by his administrator, in pursuance of an order of the orphan's court, granted under the act of the 19th of April 1794, is good without a confirmation, after a lapse of fifteen years, when no objections had been filed, and there had been no irregularity in the proceedings under the order.

WRIT of error to the court of common pleas of *Alleghany* county.
This was an action of ejectment brought in the court below, to January term 1829, by the heirs of Samuel Scott, the defendants in error, against John Watt, to recover a lot of ground situate in Pitt township. On the trial of the cause it was admitted that Samuel Scott, the father of the defendants in error, anterior to 1814, died seised in fee of the lot, and that it thereupon descended to them as his heirs at law. The plaintiff in error derived his title to the lot from James Jelly, who, in 1814, bought it at a sale made by the administrators of the deceased, under a decree of the orphan's court of Alleghany county. The administrators made a return of the sale and their proceedings to the next orphan's court after the sale took place. The purchase money, being 851 dollars, was paid by Jelly to the administrators. They executed a deed of conveyance to him, and he took possession of the lot shortly after. Since that time he and those claiming under him have had possession down to the present. No objections appear on the record of the orphan's court to have been made at any time to the sale. Nor was any irregularity alleged to exist in the proceedings and sale, except that the sale, upon its being returned to the orphan's court, did not appear, from any entry made to that effect on the records thereof, to have been approved and confirmed by the court. This was the only objection raised against the sale; and upon this ground the court below directed the jury that no title passed under it to Jelly. The court below, among other things, was requested to instruct the jury, that if a confirmation of the sale by the orphan's court were held necessary to give validity to it, after so great a lapse of time, payment of the purchase money, execution of the deed, and possession of the lot under it, the confirmation ought to be presumed by the jury, as no

[Watt v. Scott.]

objection appeared on the record to have been made against the sale, nor any shown to exist that could have justified the orphan's court in setting it aside.  This however the court refused to do.

Two errors were assigned.

1. That the court erred in charging the jury that without a confirmation of the sale no title passed.

2. That the court erred in charging the jury that there were no facts in this case from which a confirmation could be presumed, and in taking away from the jury all power of passing on the facts of the case.

*Hamilton*, for the plaintiff in error.

Up to the sale there was no allegation of irregularity in the proceedings.  There was not sufficient personal property to satisfy the debts of the intestate.  Hence the sale of a portion of his real property became necessary.  The sale was made, and a due return of it was entered upon the records of the orphan's court.  The question is, whether the title passed by the sale to Jelly the purchaser, or whether something more was requisite.  The court below considered a confirmation of the sale necessary to a title.  The right of the administrators to sell is derived from the act of the 19th of April 1794. *Purd. Dig.* 372.  The right of the heirs is not complete to the estate of the deceased, until all the debts are paid.  Groff *v.* Groff et al., 14 *Serg. & Rawle* 183.  There is nothing in the act of assembly, authorising the sale, that requires a confirmation.  It is merely an incident in practice.  In cases of partition, however, the act of assembly expressly does require a confirmation.  Hartman *v.* Stahl, 2 *Penns. Rep.* 223.  A confirmation of the sale can be obtained at any time on application to the court.  Shaupe et al. *v.* Shaupe, 12 *Serg. & Rawle* 9.  Huckle and wife *v.* Phillips, 2 *Serg. & Rawle* 7 ; The case of Richards, Guardian, &c. 6 *Serg. & Rawle* 462 ; Commonwealth *v.* Greason, 4 *Serg. & Rawle* 426.

Then, as to the next point, we contend the court was wrong in saying the jury had no facts to find upon.  The return of the administrator concludes with a prayer to the court for confirmation.  This is drawn by the attorney or clerk of the orphan's court.  The deed recites the confirmation.  In short we allege that the confirmation is a matter of course, and always takes place unless there are exceptions.  The want of it appearing on the records of the orphan's court may therefore be considered the omission of the court or of the clerk.  And are the vested rights of *bona fide* purchasers to be affected by such an omission ?  Our testimony however was rejected, because the court thought it contradicted the record.  Now it was matter only *dehors* the record, and intended to supply its omission.  Snyder's Lessee *v.* Snyder, 6 *Binn.* 496 ; Messinger *v.* Kintner, 4 *Binn.* 105 ; M'Pherson *v.* Cunliff et al., 11 *Serg. & Rawle* 422 ; Moorehead *v.* Pearce, 2 *Yeates* 456 ; Scott *v.* Hancock, 13 *Mass. Rep.* 162 ; Read *v.* Goodyear's Executors, 17 *Serg. & Rawle* 350 ; Rahm *v.*

[Watt v. Scott.]

North, 2 *Yeates* 117; 3 *Stark. Ev.* 1235; Ludlow's Heirs *v.* Wade, 5 *Ohio Rep.* 496; Mathews *v.* Thompson et al., 3 *Ohio Rep.* 272.

*Watson*, for the defendants in error.

The heirs were under age at the time these proceedings commenced, which was on the 2d of July 1814. The proceedings were *ex parte.* The records of the orphan's court were notice to the purchaser, and to all the world. At the trial every thing was given in evidence except the bond and the confirmation. There was no bond filed by the administrators. That, it is presumed, was the reason why no confirmation was had. The debts of the intestate, then unliquidated, amounted to about 400 dollars. The price of the land, for which it sold, was more than twice that amount; and James Jelly the purchaser was insolvent. Groff *v.* Groff et al., 14 *Serg. & Rawle* 184; *Gord. Decedents* 230; Act of the 26th of March 1808, *Purd. Dig.* 414; Dawson et al. *v.* Sims's Administrator, 16 *Serg. & Rawle* 371; *Purd. Dig.* 406; M'Pherson *v.* Cunliff et al., 11 *Serg. & Rawle* 436; Messinger *v.* Kintner, 4 *Binn.* 99; 3 *Bl. Com.* 331.

*Biddle*, on the same side.

Does the essential action of the orphan's court terminate with the order to sell, or is a confirmation of what has been done under that order an indispensable part of the purchaser's title, as in case of sheriff's sales? The language of the courts corresponds with the general practice and professional opinion. Thus in the case cited on the other side, 2 *Yeates* 118, Judge Smith says, " until the vendee has complied with his contract, it may be imprudent in many instances to have the sale confirmed," plainly meaning that, up to the point of confirmation, the deed is harmless and inoperative. In M'Pherson *v.* Cunliff, 11 *Serg. & Rawle* 433, Judge Duncan says, " the purchaser's contract is, in truth, with the court." How then can knowledge and approbation of the terms of the contract be pronounced superfluous? Wherever the subject is adverted to in the reports, confirmation is evidently regarded as indispensable. 6 *Binn.* 498; 7 *Serg. & Rawle* 172. The old form, found in *Graydon* 440, has been pursued here, and recites a confirmation. Considering the numerous and distressing scenes of fraud disclosed in the proceedings of administrators, and the disappearance of valuable estates, there can be no motive to *withdraw* any part of the protection which the law, as at present understood, affords to those who are incapable of guarding their own interests. The evil will be widely extended if an administrator knows that after obtaining the original order he has no occasion to invoke further the sanction of the court.

*Fetterman*, in reply.

The proceedings of the orphan's court, in this case, were based on the nineteenth and twentieth sections of the act of the 19th of April 1794. *Purd. Dig.* 406. Every thing required by that act was done

III.—L

[Watt v. Scott.]

by the administrators of the intestate. The provisions made by the act of the 2d of April 1804, are of a different character, for a different purpose, and in strikingly different language. *Purd. Dig.* 411. By the act of the 2d of April 1802, *Ibid.* 410, the order of the orphan's court is, to sell and *convey.* The acts of 1794 and 1802 present two classes of cases, in neither of which is the final order of confirmation made necessary. As to the act of 1775, section fourth, *Purd. Dig.* 290, in relation to sheriff's sales, an acknowledgement of the deed by the court is expressly required. By the recent act of the 29th of March 1832, the bond is a condition precedent, and must be filed before the order of sale is made. Here there was a fair sale and payment of the purchase money; and an uninterrupted possession for a period of fourteen years under the sale.

No objections appear to have been ever made to the sale, and therefore it is presumed to have been confirmed, as a matter of course, by the orphan's court.

The opinion of the Court was delivered by

KENNEDY, J.—Two errors have been assigned. The first is an exception to the opinion of the court, pronouncing the sale invalid, for want of a confirmation of it appearing on the records of the orphan's court. And the second, that the court erred in not charging the jury that a confirmation, if necessary under the circumstances mentioned, ought to be presumed.

The question, presented in the first error assigned, must be solved by a fair construction of the nineteeth and twentieth sections of the act of the 19th of April 1794, directing the descent of intestate's real estate, &c. *Purd. Dig.* 406 (1831). By the nineteenth section, the administrators of persons dying intestate, leaving lands, but not sufficient personal estate to pay their debts and maintain their minor children, are authorized " to sell and *convey*" such parts of the lands for that purpose, as the orphan's court of the county, in which the lands are situate, " shall think fit to allow, order and direct." And by the twentieth section, the administrators, after making the sales, are " to bring their proceedings *therein to the next orphan's court after the sale made.*" But in no part of this act, nor in that of any other on this subject until the passage of the late act of the 29th of March 1832, is it required that the sale shall be approved or confirmed by the orphan's court, in order to give it validity. I admit that it has been the practice, generally, to obtain a confirmation of such sales and to have it so entered upon the records of the court: but it has always been a matter of course to confirm, unless objections were made. Where objections are made, I think it has been the practice to commit them to writing and to file them with the clerk of the court, or to have them noted on the record; yet I cannot go so far as to condemn a sale for want of its appearing on the record that it was confirmed, after it has been carried fully into effect and consummated by the parties, and possession taken of the estate and held by the

[Watt v. Scott.]

purchaser, and those claiming under him, for a space of fifteen years, without any objection having been made or filed in the court, or made in any other form that we hear of, against the sale. Indeed I am of opinion, that according to the terms of the act it was not the intention of the legislature, after a return of the sale made by the administrator to the court, in pursuance of a previous order authorizing him to *sell* and *convey*, that any action of the court should be expressed on the record in regard to it, unless some objections were made to it; in which case the court would be necessarily called on to act; and having done so, their decision, disposing of the objections, ought to appear on their records, that it may be known what it is. Then suppose an objection to be made and entered on the record, and, immediately following, an order in these words, "objection overruled by the court." Could it be said that the sale, after this appearing on the record, ought still to be considered not good and effective? Certainly not. Then in what does the case, where an objection has been made to the sale and overruled by the court, differ from the case of a sale made, to which no valid objection can be made? Because, I take it, that after an objection made and overruled, the sale is to be considered one free from objection; and so the same conclusion is to be drawn where none appears to have been made. And if none exist, then the necessary consequence would seem to be, that the sale is good and effective. This course of reasoning appears to be sustained by the terms of the act of 1794, which expressly directs the orphan's court, upon the first application of the administrator, and on his laying the proper ground before the court, to make an order authorizing him to *sell and convey* the land. And having *sold and conveyed*, as the *order of the court directed*, he is to bring his proceedings *therein* to the *next orphan's court after the sale* made. It is reasonable then to conclude, that, as the administrator has *sold* and *conveyed* the land under an order of the orphan's court, which the court was fully competent to make, expressly authorizing him to do so, it ought to be considered not only good but effective, until it is actually set aside by some action of the court upon it. It has been asked why should the act require the administrator to bring his proceedings to the next court, unless it be to have them approved and confirmed by the court? I answer, that to me it appears that the legislature intended by this to have the proceedings put on record; and required also, that this should be done at the *next court after* the sale, so that all concerned might know, not only what was done, but likewise *when* to appear and make their objections to the sale, if they had any. But if none were made within the proper time, the natural consequence would be, that the sale was fair and free from all exception. This construction of the act of 1794 receives support, I think, from the circumstance of the legislature having introduced a new and different clause into the act of the 29th of March 1832 on this subject, from any that is contained in any prior act. In the thirty-second section, after requiring a return of the sale to be

[Watt v. Scott.]

made to the orphan's court, is added " when, if the same be approved by the court, it shall be confirmed." Now this clause was clearly unnecessary, if requiring a return of the sale to the court necessarily implied it. By this last act every purchaser at such sale is apprized in terms which cannot be misapprehended, that to make the sale perfect, it must be approved and confirmed by the court; but to supply the same requisition by mere construction of the act of 1794, under which the sale in question was made, would seem to be bringing the rights of a purchaser to a test not contained in the act itself; and of which he, therefore, may never have had the least intimation. This I feel unwilling to do, because it might bring into dispute the titles of some, perhaps many who have not only bought fairly, and paid the full value of the land, but have made large and expensive improvements upon it.

Being of opinion then, that the right or title of the defendants in error to the lot of ground in dispute, was divested by the sale made of it under the order of the orphan's court, and that they therefore have no title or claim to it, it becomes unnecessary to say any thing of the second error. Indeed, having decided the question raised in the first error against the defendants in error, the question involved in the second error does not arise in the case.

Judgment reversed.