# Morgan's Appeal.

110   271
118   164
110   271
137   137
110   271
179   380
110        271
f221      4135

1. A party cannot, by a bill in equity, obtain a rehearing of a matter which a court of competent jurisdiction has finally passed upon. But no decision of a court upon matters not within its jurisdiction will operate as such a bar.

2. Mistakes of law or fact in an award of arbitrators can only be corrected by appeal; hence the fact that the merits of a case were presented on a motion to strike off an award for alleged mistakes of law and fact would not debar the unsuccessful party from subsequently invoking the equitable powers of the court in the same matter.

3. A mortgage of a decedent's real estate, grounded upon a decree of the Orphans' Court, cannot be attacked in a collateral proceeding; any irregularity in the procuring of the same can be amended only in that court or by an appeal to the Supreme Court.

4. When an Orphans' Court authorizes an administratrix to mortgage decedent's real estate for debts, such administratrix must make return of her proceedings to said court for confirmation. Until such confirmation, the heir-at-law may interpose any objection to the execution or delivery of such mortgage.

May 25th, 1885. Before MERCUR, C. J., GORDON, PAXSON, STERRETT and GREEN, JJ. TRUNKEY and CLARK, JJ., absent.

APPEAL from a decree of the Court of Common Pleas of *Blair county:* Of July Term 1883, No. 119.

This was an appeal from a decree of said court dissolving a preliminary injunction and dismissing complainants' bill.

Bill in equity, wherein Amelia S. Morgan, administratrix of the estate of George P. Morgan, deceased, and Nannie B. Morgan, a daughter of said George P. Morgan, by her guardian John Hurd, were complainants and Edmund Mountney and J. Levan Metzgar were defendants. The material averments of the bill were as follows: George P. Morgan died intestate on February 25th, 1874, leaving his widow, Amelia S. Morgan, and an infant child, Nannie B. Morgan, and seised of a certain lot with the dwelling house thereon erected, in the city of Altoona. Letters of administration upon his estate were granted to Amelia S. Morgan. Edmund Mountney, for the use of J. Levan Metzgar, obtained an award of arbitrators in the Common Pleas for $2,440.16 against the said Amelia S. Morgan, administratrix, upon a mortgage pretended to have been executed by her after the death of her husband, under an order of the Orphans' Court, authorizing her to mortgage the property above mentioned on her own terms for payment of debts. An appeal from the award was stricken off, having

been entered one day too late. There was no description of the mortgaged premises in the suit, other than by reference to the book of the recorder's office. There was no return to the alleged order to mortgage, nor any decree of confirmation. Nannie B. Morgan, the heir, was not represented, having no guardian. No money was received by Mrs. Morgan on said mortgage. The only scheduled debt mentioned in the petition for leave to mortgage was a debt of $2,299.19 due to Edmund Mountney for building one dwelling house. This debt was substantially paid, by a debt due from Mountney to George P. Morgan, and by his boarding account with Mrs. Morgan for five years after her husband's death, under an agreement with Mountney which she made for the benefit of her child, that he should board with her on account of said debt. Mrs. Morgan is an illiterate person, and Mountney fraudulently procured her mark to the petition in the Orphans' Court, and to the mortgage, which in fact never was delivered. The prayer of the bill was that the said mortgage be declared to be null and void and that the same be delivered up for cancellation, and also that the said Edmund Mountney and J. Levan Metzgar be enjoined from proceeding upon the judgment obtained upon the award of the arbitrators. The court granted a preliminary injunction, and on the motion to continue the same, it appeared from the affidavits of defendants that Mountney had erected a dwelling house on a lot belonging to the said George P. Morgan during his lifetime and at his request; that no price was agreed upon for the same; that George P. Morgan died before the completion of the same; that Mountney then suggested that Mrs. Morgan take out letters of administration, which she accordingly did and afterwards applied to the Orphans' Court for an order to mortgage the real estate for the payment of this debt to Mountney, being in amount $2,299.19, which was the actual cost of the work and materials furnished on the house less the amount of board that he owed. Mountney assigned the said mortgage to Metzgar for its full value. After the mortgage fell due, a *scire facias* was issued upon it and the matter referred under the compulsory arbitration law to arbitrators, who found in favor of the plaintiffs and a judgment was entered on their award.

Afterwards counsel for Mrs. Morgan obtained a rule to show cause why the award of the arbitrators should not be stricken off; subsequently Nannie B. Morgan, by her guardian, was made a party to this suit.

The reasons assigned for the rule were as follows: (1) Because the record does not show the terms of the mortgage, or that there is any mortgage, there being no copy thereof or suggestion of breaches. (2) The mortgage was not given for

money borrowed, nor was there any return or confirmation thereof. (3) There was no notice to the minor child of decedent. (4) The mortgage was obtained by fraud.

The court, after hearing and argument, discharged the rule to strike off the award. This bill for an injunction was then filed. The court after argument dissolved the preliminary injunction and dismissed the bill in the following opinion:

A comparison of the averments in this bill with those in a petition and affidavit of Amelia S. Morgan, filed in this court for rule to show cause why Lev. Fa. No. 151, January Term, 1879, should not be set aside and judgment opened, discloses in substance the same grounds of complaint in both. The record also shows the same parties; for while the guardian was not originally a party to the proceedings to open the judgment on which the writ was issued, he afterwards, before hearing and decree, by leave of court was made a party and was heard. Every question raised here by this bill was then passed upon and decided. This is fatal to this bill; having sought to enjoin defendants in the proceedings on the bill to show cause they, by invoking the equitable powers of the court in that form of proceeding, are concluded by that decree. This point is fully decided in Gordinier's Appeal, 8 Norris, 528, and in Frauenthal's Appeal, 4 Out., 290. The preliminary injunction is therefore dissolved and bill dismissed at cost of plaintiffs.

Complainants then took this appeal, assigning for error this action of the court.

*Samuel S. Blair* (*Andrew J. Riley* with him), for appellants. —It is true that the facts set forth in this bill for an injunction are the same that were before the court on the rule to show cause why the judgment should not be opened. But the court did not pass upon the facts, because in their opinion the mere presence of Mrs. Morgan at the arbitration showed that she had an opportunity to defend, and therefore she was concluded by it. The merits of the case were not then decided, and a former judgment or decree is only a bar when it was made on the merits of the case: Detrick v. Sharrar, 14 Nor., 526; Bigelow on Estoppel, 121.

The administratrix had no power to make the mortgage; the court had no right to authorize her to make a mortgage on such terms as she saw fit: Myers v. Hodges, 2 Watts, 383; Act March 29th, 1832.

The want of a return to the order and confirmation is fatal to the mortgage: Act March 29th, 1832; Demmy's App., 7 Wright, 168; West v. Cochran, 8 Out., 482; Watt v. Scott, 3 Watts, 79; Quinn's App., 5 Norris, 447.

14 OUTERBRIDGE—18

*Daniel J. Neff*, for appellees.—Even admitting all that is alleged, there was no fraud in obtaining the decree of the court or mortgage. If the administratrix was induced or persuaded by Mountney to give the mortgage for a debt of the estate, this constitutes no fraud. But if Mountney had procured it by fraud it would not affect the assignee of the mortgage: Leedom *v.* Lombaert, 30 P. F. S., 390.

The evidence of the administratrix that she never authorized the proceedings in the Orphans' Court was clearly inadmissible: Selin *v.* Snyder, 7 S. & R., 171.

The assignee of the mortgage is protected by the decree of the court. Neither the administratrix nor the heir, nor any one else, can set up the defence against the mortgage, that the decedent did not owe the debt, or that it had been paid, or that there was a set-off against it. The administratrix cannot set up this defence because she has borrowed the money avowedly for the purpose of paying this debt, and has paid it. The heir cannot question the mortgage on this ground, for if the administratrix has used the money borrowed to pay a debt the estate did not owe, or that had been paid, the remedy of the heir would be against her: McPherson *v.* Cunliff, 11 S. & R., 422; Dixcy's Ex'rs *v.* Lanning, 13 Wright, 146; Marcy's Estate, 10 Harris, 140; Biles's Estate, 2 Brewst., 616.

A return to the order and confirmation of the mortgage is not necessary to the validity of the mortgage: Biles's Estate, 2 Brewst., 610; Leedom *v.* Lombaert, 30 P. F. S., 383.

It is admitted that the facts set forth in the bill for an injunction are the same that were before the court on the rule to show cause why the judgment should not be opened. On the rule to show cause the administratrix and the guardian of the minor child were parties and were heard, depositions were taken, and after full hearing the rule was discharged. Under such circumstances the equitable powers of the court cannot be invoked: Gordinier's App., 8 Nor., 528; Frauenthal's Appeal, 4 Out., 290.

Mr. Justice GORDON delivered the opinion of the court, October 5th, 1885.

We think the court below has misconstrued the character of the bill under consideration. It seems there to have been regarded as merely an attempt to renew the contention which had been previously settled under the rule of the 24th of March, 1879, to show cause why the judgment on the *scire facias* should not be set aside. Were it intended simply to re-open this controversy and thus get a rehearing of that which a competent jurisdiction had finally passed upon at the time mentioned, we would certainly agree that the plaintiffs

were concluded by the principles announced in Gordinier's Appeal, 8 Nor., 528. Where a defendant has been heard, or has had the opportunity to be heard, in a Court of Common Law, even though his defence be an equitable one, he cannot be re-heard on a bill. Neither can he thus cure a mistake in the trial of his case, or a neglect to appeal, or to sue out a writ of error in time. But the principles here stated do not enter into the contention in hand.

The order of the Orphans' Court to the administratrix to mortgage the real estate which had been of George P. Morgan, deceased, was without notice to Nannie B. Morgan, the heir at law, nor, indeed, was such notice required by the Act of 1832, hence, the decree of that court directing the mortgaging of her property, could bind her only so far as it was based on a substantial compliance with the provisions of that Act. Neither had she anything to do with the *scire facias*, and the award upon it. All the defence that was made upon the trial of that writ was made by the administratrix, and the judgment was against her alone. The first we hear of the intervention of Nannie B. is by her guardian on the motion to set aside, or strike off, the judgment, some year or more after the entry thereof. She has now intervened in a proper manner and for a proper purpose, and, if the subsequent action of the court concludes her, and brings her within the doctrine of the case above cited, that is the end of her bill, but not otherwise. But, according to the authority invoked, the parties were concluded by the action of the Common Pleas because that court had power to determine the question brought before it on the rule to show cause, and to grant the required relief, if the facts of the case so warranted, and on no other hypothesis could such judgment be regarded as conclusive.

Our question then is, had the Common Pleas of Blair county the power to make absolute the rule of the 24th of March, 1879, to strike off the award of arbitrators? For, if it had such power, it could also, on the exercise thereof, have ordered the parties to interplead, and thus have had full justice done between them. Four reasons were given in support of this rule to show cause; they were as follows: " (1) Because the record does not show the terms of the mortgage, or that there is any mortgage, there being no copy thereof or suggestion of breaches. (2) The mortgage was not given for money borrowed, nor was there any return or confirmation thereof. (3) There was no notice to the minor child of decedent. (4) The mortgage was obtained by fraud."

To these a fifth was added by the counsel for the guardian, but, as the substance of it is embraced in the third, we give it no consideration. But for neither of these reasons was the

court authorized, under the compulsory arbitration Act, to strike off the award. That can only be done in two cases: (1) Where the arbitrators have misbehaved themselves in the course of the hearings before them, and (2) where the award has been procured by corruption or other undue means. The most, however, that is alleged in the reasons above stated is that the arbitrators made a plain mistake in matters of fact and law, but the only way to correct errors of this kind is by appeal: Walls *v.* Wilson, 28 P. S. R., 514; Wynn *v.* Bellas, 34 Id., 160. As to the alleged defect in the record, that might have been cured by amendment or by a writ of error, but certainly not by a rule to strike off the award. The court, then, might have discharged this rule on the ground that it had no power to make it absolute; hence, in fact, the movers took nothing by their motion because they asked for what the court had no power to give them. It follows that, as yet, there has been no adjudication of the principal complaint contained in the plaintiffs' bill; as yet Nannie B. Morgan has not been heard upon the validity of the mortgage.

That equity can, and will, interfere to prevent the execution of a judgment at law against the person or estate of one not bound thereby is a proposition now so long and well established that it is no longer open to discussion. If the mortgage of the 23d of July, 1874, executed by the administratrix to Edmund Mountney, was not binding on the property of the heir at law, she has the right to ask a court of equity to remove the cloud thus cast on her title, and prevent the annoyance and expense that may result from a judicial sale of her estate.

The question, then, and the sole one, is that involving the validity of that instrument. If, as is contended, it has its foundation in the definitive decree of the Orphans' Court, it cannot be impeached in this or any other collateral proceeding. No mere irregularity can be made to avail for that purpose, for such irregularity could only be corrected in the Orphans' Court itself, or in this court by appeal. It is, therefore, to no purpose to urge that the court did not direct specifically the amount of money that should be raised by the mortgage, or that it was executed and delivered to Mountney in satisfaction of his debt without the payment of the money to the administratrix, or into court, for had there been a final approval of the proceedings by the proper tribunal, even though that approval itself were informal, it is sure that none of these things could be reviewed by a bill in equity, or in any other manner than as above stated. We are, however, considering a case in which there has been no approval of the action of the administratrix. We find an order authorizing the admin-

istratrix to execute a mortgage for the payment of the debts of the decedent, but beyond this we find nothing. Even this is irregular, as it vests in the trustee a discretion which, under the Act, belongs to the court alone. This, however, might have been cured by a decree of confirmation, for, by such act, it would be assumed that the court adopted what the trustee had done. But as there was no such decree we cannot assume an approval. The fact is that the court was never so much as informed that the Mountney mortgage had been executed, and had therefore no opportunity either to assent to or dissent from the act of its agent.

The court below, whilst admitting that an order of sale thus executed would be good for nothing, held, nevertheless, that in the case of a mortgage, this want of confirmation was but an irregularity that might be disregarded. We cannot see the matter in this light. Why is an administrator's sale of land not good without confirmation? In the case of Watt *v.* Scott, 3 Watts, 79, it was held that, under the Act of 1794, such a sale without confirmation was good, but because the requisitions of the Act of 1832 were different, a sale without confirmation, under that Act, would not be valid. And so in Demmy's Ap., 7 Wr., 155, it is said that an Orphans' Court sale requires confirmation by the express words of the Statute. We have not far to go, therefore, for the reason why the approval of the Orphans' Court is necessary ; the Act of 1832 requires it. But it requires such confirmation just as much in the case of an order to mortgage as in an order to sell. " The said court may order the sale or mortgage of such part or so much of said real estate as to them shall appear necessary, . . . . . and such executor, administrator or guardian shall in all cases make return of his proceedings in relation to such sale or mortgage, to the Orphans' Court of the county in which the real estate so sold or mortgaged lies, when, if the same be approved by the court, it shall be confirmed." Now, as the court below has done, we might give many good reasons why the legislature ought, in this particular, to have made a difference between sales and mortgages, but it would be a very useless job, for it would not alter the fact that no such difference was made, and we are bound, not by what that body might or ought to have done, but rather by what it actually did do. When the general assembly has said, for the debts of the decedent you may mortgage the estate of the heir, and if the Orphans' Court approve such mortgage it shall be confirmed, how are we to assume the power to strike out this subjunctive clause, and say we will treat it as confirmed though not approved by the Orphans' Court? Moreover, it is not altogether unreasonable that the Orphans'

Court should have in its power, and under its immediate direction the entire proceedings from first to last. Until final confirmation and delivery of the mortgage, the heir may interpose his objection to its execution, or, if executed, to its delivery, and it is but reasonable that he should have such opportunity. He might well urge, in just such a transaction as the one in hand, that the mortgage should not be delivered without the payment of the money, or, at least, until the debt of the mortgagee had been definitely ascertained and passed upon by the proper authority. Many other reasons might be adduced why an administrator and creditor ought not to be allowed to encumber, at their own will, the estate of the heir, and why a court should very carefully scrutinize a matter such as this, and keep it well in hand, but, as the letter of the Statute itself furnishes a sufficient reason for its own provisions, we need not trouble ourselves with the task of framing others.

From what has been said, it is apparent that the decree of the court below must be reversed, and that the plaintiffs are, at least, entitled to an injunction against the execution of the judgment on the *scire facias*, but as we see nothing in the way of an application, by the mortgagee, to the Orphans' Court for an approval and confirmation of the mortgage, after notice to all parties interested, and an adjustment of their several equities, we will not order its surrender and cancellation.

The decree of the court below dismissing the plaintiffs' bill is now reversed at the costs of the appellees, and it is further ordered that Edmund Mountney and J. Levan Metzgar be enjoined and restrained from proceeding by execution on a judgment recovered in the Common Pleas of Blair county on a mortgage given by Amelia S. Morgan, as administratrix of George P. Morgan, deceased, to Edmund Mountney, dated July 23d, 1874.